# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**RACHEL COCKE**                                   **CASE NO.  6:18-CV-01086**

**VERSUS**                                         **JUDGE ROBERT R. SUMMERHAYS**

**LOURDES PHYSICIAN GROUP, LLC,**                  **MAGISTRATE JUDGE WHITEHURST**
**ET AL.**

## <u>MEMORANDUM RULING</u>

Before the Court in this employment discrimination suit for violations of the Americans
with Disabilities Act ("ADA") is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), filed
by Defendants, Lourdes Physician Group, LLC ("LPG"), Our Lady of Lourdes Regional Medical
Center, Inc. ("Lourdes RMC"), and Franciscan Missionaries of Our Lady Health System, Inc.
("FMOLHS") [Doc. No. 7] Pursuant to their motion, Defendants seek dismissal of all claims
asserted by Plaintiff Rachel Cocke. For the reasons that follow, the motion is GRANTED IN PART
and DENIED IN PART.

## I.
### BACKGROUND[1]

In August 2011, LPG hired Plaintiff to work as an office manager. She was subsequently
promoted to South Region Physicians Practice Manager, which required her to travel to various
facilities operated by LPG. In the summer of 2014, Plaintiff began to suffer complications related
to what was believed to be epilepsy.[2] Plaintiff's physician advised her she should not work and

---

[1] The factual information set forth above is taken from Plaintiff's Complaint, and for these purposes, "[t]he
court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re
Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[2] It was subsequently determined that Plaintiff had been misdiagnosed with epilepsy, and the correct
diagnoses was "beta hyperadrenergia," which is a birth defect that causes seizures. [Doc. No. 1 ¶ 14]

should take medical leave. Plaintiff submitted medical documentation to LPG indicating she could not work due to seizures which were unpredictable and not medically controlled. LPG granted Plaintiff's request for medical leave, which commenced on July 15, 2014.

On or before October 2014, Plaintiff requested an accommodation from LPG to reduce her travel obligations so that she could continue to work for the company. [Doc. No. 1 at ¶¶ 15, 20]. Plaintiff asked to either be permitted to work temporarily from home in her same position, or be transferred to a position requiring less travel, such as a manager at one of LPG's clinics. *Id.* at ¶¶ 18, 20, 25, 35-36. However, LPG "did not engage in an interactive process to determine how [Plaintiff's] medical restrictions could potentially be accommodated." *Id.* at ¶ 21. Instead, LPG terminated Plaintiff on January 21, 2015, prior to the expiration of her medical leave. *Id.* at ¶¶ 27, 28. According to Plaintiff, LPG had "allowed multiple employees to work from home" and had made similar accommodations to those requested by Plaintiff for other employees. *Id.* at 16-17, 33.

Plaintiff filed a charge with the EEOC, which issued a Right to Sue letter on or about June 12, 2018. Thereafter, Plaintiff brought this suit against LPG and its parent corporations, Lourdes RMC and FMOLHS, for disability discrimination in violation of the ADA, 42 U.S.C. § 12101, et seq., and the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq.

## II.
### STANDARD OF REVIEW

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). Such a motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id.* at 161–62. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (internal quotation marks omitted). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint which merely "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Iqbal* at 678 (internal quotation marks and alterations omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which merely creates a suspicion of a legally cognizable right of action. *Twombly* at 555.

### III.
### LAW AND ANALYSIS

**A.    Whether Plaintiff has stated legally cognizable claims against LPG's parent corporations.**

LPG's parent corporations, Lourdes RMC and FMOLHS, contend Plaintiff has failed to set forth sufficient facts in her Complaint to establish claims against these entities. [Doc. 7-1 at 9]. The Complaint sets forth the following allegations against Lourdes RMC and FMOLHS:

11.     LPG is a subsidiary of Defendant, Our Lady of Lourdes Regional Medical Center, Inc. ("OLL").

12.     The human resources department was handled collectively by LPG, OLL and, upon information and belief, Franciscan Missionaries of Our Lady Health System, Inc. ("Franciscan Missionaries"). As such, the allegations made herein apply to the Defendants collectively, though LPG remained Mrs. Cocke's direct employer.

. . . .

28.     Mrs. Cocke was terminated in [sic] January 21, 2015, prior to her leave expiring. She received a letter dated February 2, 3015, from Franciscan Missionaries memorializing her termination[.]

[Doc. No. 1 at 3, 4]. No other references are set forth in the Complaint as to these two entities. Relying upon the allegations set forth above, Plaintiff asserts "[t]here is obvious interrelation of operations between LPG, Lourdes RMC and FMOLHS based on the parent-subsidiary relationship of the entities as alleged," and "[t]he centralized control of labor relations is evidenced based the [sic] uniform human resources departments." [Doc. No. 10 at 19].

Under the ADA, a defendant cannot be held liable for discriminatory employment actions unless it qualifies as an "employer" under the statute. *Bloom v. Bexar Cnty., Tex.*, 130 F.3d 722, 724 (5th Cir. 1997); *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The ADA defines an employer as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ." 42 U.S.C. § 12111(5)(A). Because the statutory definition provides little assistance in resolving the issue of whether a parent corporation is a de facto employer, the jurisprudence has "construed the term 'employer' broadly to include superficially distinct entities that are sufficiently interrelated to constitute a single, integrated enterprise." *Lusk* at 777; *see also Tipton v. Northrup Grumman Corp.*, 242 Fed.Appx. 187, 190 (5th Cir. 2007). However, "[t]he doctrine of limited liability creates a strong presumption that a

parent corporation is not the employer of its subsidiary's employees." *Lusk*, 129 F.3d at 778; *Tipton* at 189.

To determine whether a parent corporation and its subsidiary constitute a "single employer" under the ADA, courts apply the four-part analysis originally adopted by the Supreme Court for labor disputes in *Radio Union v. Braodcast Serv.*, 380 U.S. 255, 257 (1965), and extended to civil rights actions by the Fifth Circuit in *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983). *Tipton* at 187, 190 (citing *Lusk*, 129 F.3d at 777). This test examines: (1) interrelation of operations, (2) centralized control of labor or employment decisions, (3) common management, and (4) common ownership or financial control. *Tipton* at 190; *Lusk* at 777. Of these factors, the Fifth Circuit has placed the "highest importance" on the second, which it has refined to "what entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986); *see also Tipton* at 190; *Lusk*, 129 F.3d at 777.

While Plaintiff's opposition to Defendants' Motion to Dismiss asserts Defendants were a "single employer," the opposition also demonstrates that Plaintiff does not presently know whether that claim is true:

> Although additional information, which is not available to Mrs. Cocke but can be made available during discovery, may aid in showing Lourdes RMC and FMOLHS' involvement in LPG's daily decisions, shared employees, and/or the commingling of bank accounts, at this stage in the proceeding, Mrs. Cocke has presented adequate information that these entities may in fact be held liable as a joint employer.

[Doc. No. 10 at 19]. Moreover, none of the allegations in the Complaint address the factors for single employer status, save the allegation that the human resources department was handled collectively by LPG, Lourdes RMC and FMOLHS. Most significantly, Plaintiff has not alleged that Lourdes RMC or FMOLHS "made the final decisions regarding employment matters."

*Trevino* at 404; *see also Munoz v. Seton Healthcare, Inc.*, 557 Fed.Appx. 314, 318 (5th Cir. 2014) (an employer must be the "entity [making] the final decisions regarding employment matters related to the person claiming discrimination") (quoting *Chaiffetz* at 735). Absent sufficient *factual* allegations – not conclusions – establishing a plausible claim that Lourdes RMC, FMOLHS and Plaintiff's direct employer, LPG, were sufficiently interrelated to constitute a single employer, Plaintiff cannot state a claim against these entities. *See Iqbal*, 556 U.S. at 678 (a complaint which merely "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss). Accordingly, the Court grants the motion to dismiss with respect to Lourdes RMC and FMOLHS.[3]

**B.      Whether Plaintiff's state law claims have prescribed.**

Plaintiff concedes that her claims asserted under the Louisiana Employment Discrimination Law have prescribed. [Doc. No. 10 at 1 n.1]. Accordingly, the motion is granted to the extent it seeks dismissal of Plaintiff's claims asserted under state law.

**C.      Whether Plaintiff has stated a legally cognizable claim based upon LPG's failure to accommodate her disability.**

Defendant LPG contends Plaintiff has failed to state a claim of disability discrimination based upon LPG's failure to accommodate Plaintiff's disability. According to LPG, at the time of Plaintiff's termination she was no longer a qualified individual with a disability and there was no reasonable accommodation available to her. [Doc. No. 7-1 at 14]. In support of its position, LPG argues:

> [Ms. Cocke] was restricted from working, had been for over six months, and remained so . . . at the time of her termination. Ms. Cocke would have to have been able to return to work within a reasonable period and be able to perform the essential functions of the job with or without a reasonable accommodation.

---

[3] As the Court has concluded Plaintiff has failed to state a claim against Lourdes RMC and FMOLHS, it need not reach Defendants' argument that claims against the foregoing entities should additionally be dismissed due to Plaintiff's failure to exhaust administrative remedies. [Doc. 7-1 at 11].

*Id.* (citations omitted). Finally, LPG asserts because Plaintiff was unable to work at the time of her termination, it "was never required to consider other accommodations." *Id.* at 13.

"The ADA prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability' regarding the 'terms, conditions, and privileges of employment.'" *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir.2017) (alteration in original) (quoting 42 U.S.C. § 12112(a)). Discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . ., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a *prima facie* case for failure to accommodate, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)). The ADA defines disability, in pertinent part, as: "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). The term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). The term "reasonable accommodation" may include:

(A)    making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B)    job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities.

*Id.* at § 12111(9).

As set forth in her complaint, Plaintiff alleges she requested a reasonable accommodation from LPG so that she could continue to work for LPG in either her same position (if modified), or in a different position which she could perform without modifications. [Doc. 1 ¶¶ 15, 18, 20-21, 35-36]. She sets forth allegations indicating she is a qualified individual with a disability [Doc. 1 ¶¶ 7-8, 10]; that her disability and its consequential limitations were known by LPG [*Id.* ¶¶ 10, 20, 24, 33-34]; and that LPG failed to make reasonable accommodations for such known limitations [*Id.* ¶¶ 23, 27, 33, 35]. As such, the Court finds Plaintiff has adequately stated a claim for failure to accommodate.

**D.     Whether Plaintiff has stated a legally cognizable claim for failure to accommodate based on her being "regarded as" disabled.**

A plaintiff can state a claim under the ADA not only where she is actually disabled, but also where she is "regarded as" disabled by her employer. 42 U.S.C. § 12102(1)(B); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).[4] However, LPG contends following the ADA Amendments Act, "employers are not required to provide a reasonable accommodation for an employee who is merely 'regarded as' disabled." [Doc. No. 7-1 at 12]. In opposition, Plaintiff first notes she does not use the phrase "regarded as" in her Complaint as "a concession that she was . . . not an individual with a disability," but instead uses the phrase merely as a reference to her seizures being related to her misdiagnosis of epilepsy rather than a heart condition. [Doc. No. 10 at 16]. In other words, Plaintiff uses the term "regarded as" in a colloquial sense, rather than as a term of art defined by the ADA. Nevertheless, Plaintiff argues LPG's

---

[4] An individual meets the requirement of being "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

position that employers are not required to provide reasonable accommodations to employees who are regarded as disabled is incorrect.

After the passage of the ADA Amendments Act of 2008 ("ADAAA"), employers are no longer required to "provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section." 42 U.S.C. § 12201(h). Section 12102(1)(C) sets forth the definition of an employee who is "regarded as" disabled. Accordingly, Plaintiff cannot state a claim for failure to accommodate to the extent that it is based upon her being "regarded as" disabled under Section 12102(1)(C). *See e.g. Fierro v. Knight Transp.*, 2012 WL 4321304, *3 (W.D.Tex. 2012); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011); *Hohider v. UPS, Inc.*, 574 F.3d 169, 188 n. 17 (3d Cir.2009)).[5] However, Plaintiff's allegations can be reasonably construed to assert she is a qualified individual with an *actual* disability, and that she is not asserting a failure to accommodate claim based upon being "regarded as" disabled under Section 12102(1)(C). Accordingly, the motion to dismiss is granted only to the extent Plaintiff is seeking to assert a claim for failure to accommodate based upon Section 12102(1)(C). As the Court has previously ruled, Plaintiff has stated a claim for failure to accommodate based upon her allegation that she is actually disabled, as defined in Section 12102(1)(A).

---

[5] The Court further notes the cases cited by Plaintiff in support of her position are inapplicable as they do not involve claims of failure to accommodate, but rather involve claims of discriminatory termination. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015); *United States Equal Employment Opportunity Commission v. Mid South Extrusion Inc.*, 341 F.Supp.3d 653, 658, 660 (W.D.La. 2018).

**E.      Whether Plaintiff has stated a legally cognizable claim of discriminatory termination.**

Defendant argues Plaintiff has failed to plead a claim of discriminatory termination, because at the time of Plaintiff's termination she "was no longer a qualified individual with a disability." [Doc. No. 7-1 at 18]. Plaintiff responds that the facts set forth in the Complaint, particularly the allegation that "LPG terminated her because of [her disability] and/or failed to make a reasonable accommodation which was afforded to other employees at LPG," are sufficient to state a claim under the ADA. [Doc. No. 10 at 17 (quoting Doc. No. 1 ¶ 33)].

A discriminatory termination claim under the ADA requires a plaintiff to show: (1) she has a disability; (2) she was qualified for the job; and (3) she was terminated on account of her disability. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). Defendant addresses only the second element in its briefing. As to the second element, a plaintiff must show: (1) she could perform the essential functions of the job in spite of her disability, or, if she could not (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job. *Id.* In this matter, Plaintiff has alleged that had Defendant provided her with a reasonable accommodation – such as reducing her travel obligations, allowing her to temporarily telework, or transferring her to a position that did not require extensive travel – she could have performed the essential functions of her job. [Doc. No. 1 ¶ 15, 35] The Court finds these allegations are sufficient to state a claim for discriminatory termination under the ADA.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion to Dismiss [Doc. No. 7] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent it seeks dismissal of (1) all claims asserted against Our Lady of Lourdes Regional Medical Center, Inc. and Franciscan Missionaries of Our Lady Health System, Inc., (2) all claims asserted under state law, and (3) all

claims for failure to accommodate based upon Plaintiff being "regarded as" disabled. The motion is DENIED in all other respects.

THUS DONE AND SIGNED this 9th day of May, 2019.



**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**