UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RACHEL COCKE** | **CASE NO.  6:18-CV-01086** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **LOURDES PHYSICIAN GROUP, LLC, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

**MEMORANDUM RULING**

The present matter before the Court is a Motion for Summary Judgment filed by defendant Lourdes Physician Group, LLC ("LPG").[1] For the reasons that follow, the motion is GRANTED.

**I.**
**BACKGROUND**

The present case involves claims brought by plaintiff Rachel Cocke under the Americans with Disabilities Act ("ADA") and state law against LPG. LPG hired Cocke as an office manager in August 2011, and she was later promoted to the position of "South Region Physicians Practice Manager" for LPG.[2] As a physicians practice manager, Cocke managed several LPG physician clinics in Broussard, Youngsville, Erath, Abbeville, and portions of Lafayette, Louisiana, and was responsible for "managing the day-to-day operations of these multi-specialty medical clinics, including such duties as managing the employees of each clinic; enforcing policies and procedures; hiring, firing, and counseling team members; budget preparation; expense, supply, and inventory control; assistance in development and implementation of performance standards;

---

[1] ECF No. 40.
[2] ECF No. 42 at 1.

patient satisfaction initiatives; team member satisfaction initiatives; and the like."[3] Cocke's duties required frequent travel to the clinics she managed.[4]

On July 2014, Cocke began suffering episodes of severe seizures at work and was ultimately diagnosed with "intractable partial complex epilepsy with secondary generalization."[5] Cocke's treating physician, Dr. Sylvia Rojas, concluded that Cocke would need follow-up evaluations, that her seizures would "cause episodic flare-ups periodically," and that she was "unable to work" at least until a re-evaluation on August 26, 2014.[6] LPG approved Cocke for Family Medical Leave Act ("FMLA") leave from July 15, 2014 to August 26, 2014.[7] However, she did not return to work on August 26th. On August 26, 2014, Dr. Rojas opined that Cocke could not return to work until at least December 16, 2014.[8] Cocke informed LPG of this change, and LPG informed her that her FMLA leave would expire prior to her expected return date. LPG, however, granted non-FMLA leave to Cocke as an accommodation, and extended her non-FMLA leave through December 16th.[9]

On September 18, 2014, Dr. Rojas provided a written update on Cocke's condition: "Mrs. Rachel Cocke is under neurologic care for epilepsy. Her treatment plan consists of prescription medication, regimented sleep and leave of absence from work."[10] On October 2, 2014, Dr. Rojas opined again that Cocke could not return to work "due to the unpredictable nature of her seizures" and that seizures could be triggered by "stress and sleep deprivation."[11] Dr. Rojas reiterated that Cocke would be evaluated on December 16th, and provided an anticipated return to work date of

---

[3] ECF 40-2 (citing ECF No. 40-4 at 9-10, ECF No. 40-5).
[4] ECF No. 40-4 at 11.
[5] ECF 40-6 at 24.
[6] ECF No. 40-6 at 4-7.
[7] *Id*. at 8.
[8] *Id.* at 15.
[9] *Id*. at 18.
[10] *Id*. at 21.
[11] *Id.* at 24.

January 5, 2015.[12] When LPG communicated with Cocke concerning her leave extension on October 10th and October 16th, it requested additional information concerning whether Ms. Cocke's physician anticipated that Ms. Cocke would return to "full duty" as a practice manager. Cocke met with her supervisor, Jaelyn Richard, and indicated that she would not be able to return to work as a manager after her FMLA leave was complete, but that she wished to return to work for LPG in some capacity.[13] In that regard, in an October 16, 2014 e-mail, Richard stated that Cocke "does not wish to return to her current manager role once her FMLA is complete" but would like to return in another role.[14] Richard noted at the time that there was a "part-time/PRN clerical role that [Cocke] could fill upon her return."[15] LPG ultimately extended Cocke's non-FMLA leave through December 28, 2014, but informed her that they would replace her as the south region practice manager.[16] LPG contends that in October and November 2014, its staff had trouble obtaining information from Cocke about a firm return-to-work date. Cocke testified during her deposition that, in October and November of 2014, the medications she was taking to treat her epilepsy rendered her "almost incapacitated" such that she required the assistance of her husband and mother to communicate with LPG.[17]

At some point, however, Cocke informed LPG that she would not be able to return to work until March 16, 2015.[18] LPG allowed Cocke to take personal leave through January 25, 2015, but denied any further extension of her leave through March 16th. LPG informed Cocke that her employment would be terminated if she could not return to work by January 25th. According to

---

[12] *Id.*
[13] ECF No. 40-6 at 30.
[14] *Id.* at 31; ECF No. 40-7 at 3.
[15] ECF No. 40-6 at 31.
[16] *Id.* at 33.
[17] ECF No. 40-4 at 62.
[18] *Id.* at 2, 43; ECF No.40-6 at 2.

LPG, Cocke was terminated on January 21, 2015 because she had not been released to return to work and could not provide LPG with a firm return-to-work date.[19]

In June 2015, Dr. Rojas' records indicate that Cocke was "not doing well in [sic] a consistent basis," that she was not able to perform full-time sedentary work, and that she "might be able to return" to work on September 29, 2015.[20] Cocke testified that she was not sure when she was ultimately released to return to full-time work, but that she did not return to work in any capacity until 2017.[21]

After her termination, Cocke filed a charge with the EEOC against LPG, claiming discrimination, harassment, and failure to accommodate under the ADA. The EEOC subsequently issued a Right to Sue letter on or about June 12, 2018.[22] Cocke then brought this suit against LPG and its parent corporations, Our Lady of Lourdes Regional Medical Center, Inc. ("LRMC") and Franciscan Missionaries of Our Lady Health System, Inc. ("FMOLHS"), asserting claims for violation of the ADA, 42 U.S.C. § 12101, *et seq*., and the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq*. In a prior ruling, the Court dismissed the claims against LRMC and FMOLHS. The Court also dismissed Cocke's state law claims and her claim for failure to accommodate based upon Cocke's being "regarded as" disabled.[23] The Court concluded that Cocke had stated claims for failure to accommodate and discriminatory termination under the ADA against LPG.[24] LPG now seeks summary judgment on those remaining claims.

---

[19] ECF No. 42 at 3.
[20] ECF No. 40-9 at 4.
[21] ECF No. 40-4 at 33.
[22] ECF No. 43-2.
[23] ECF No. 14.
[24] *Id.*

## II.
### STANDARD OF REVIEW

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[25] The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[26] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[27] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[28] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[29] If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect

---

[25] Fed. R. Civ. P. 56(a).
[26] *See Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).
[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).
[28] *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986).
[29] *Celotex Corp.*, 477 U.S. at 324–326, 106 S. Ct. 2548.

to each essential element of its affirmative defenses or claims.[30] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[31] Under this standard, the non-movant cannot rely on unsupported assertions or arguments but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[32]

In considering a summary judgment motion, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[33] "Credibility determinations are not part of the summary judgment analysis."[34] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[35]

### III.
### LAW AND ANALYSIS

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[36] It also "requires an employer to make reasonable accommodations to the known

---

[30] *Id.*
[31] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).
[32] *Celotex Corp.*, 477 U.S. at 330–331, 106 S. Ct. 2548.
[33] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[34] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[35] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[36] 42 U.S.C. § 12112(a).

physical or mental limitations of an otherwise qualified individual with a disability…."[37] Where, as here, a plaintiff grounds an ADA discrimination claim on circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination by showing "(1) that [he or she] has a disability; (2) that [he or she] was qualified for the job; and (3) that [he or she] was subject to an adverse employment decision on account of [his or her] disability."[38] In order to prevail on a claim for failure to accommodate, a plaintiff must show that "(1) [he or she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."[39] A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more major life activities."[40] To establish that she is a qualified individual with a disability, Cocke must show that she was able to perform the essential functions of her job, with or without a reasonable accommodation.[41]

LPG argues that Cocke was not a qualified individual with a disability because her treating physician had not cleared her to return to work in any capacity at the time of her termination.[42] The Court agrees. An employee who is unable to return work in any capacity is not a qualified individual with a disability.[43] For example, in *Moss v. Harris Cty. Constable Precinct One*, the plaintiff underwent back surgery and exhausted all FMLA leave and non-FMLA medical leave during his recovery.[44] After five months of leave, his doctor had instructed him and his employer

---

[37] *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (citations omitted).
[38] *Id.* (citing *E.E.O.C. v. LHC Grp., Inc*., 773 F.3d 688, 697 (5th Cir. 2014)).
[39] *Id.* (citing *Feist*, 730 F.3d at 452).
[40] 42 U.S.C.A. § 12102(1)(A).
[41] *Moss*, 851 F.3d at 417 (citing *LHC Grp*., 773 F.3d at 697).
[42] ECF No. 40-1 at 14-26.
[43] *Quick v. Wal-Mart Stores, Inc*., 728 F. App'x 396, 397 (5th Cir. 2018) ("[a] person who cannot do any work, let alone the particular work required for the job from which she was discharged, is not a 'qualified individual'" under the … ADA").
[44] 851 F.3d 413, 418 (5th Cir. 2017).

that he would be unable to return to work for at least two more months. His leave was not extended and he was terminated.[45] The Fifth Circuit held that, the plaintiff was not a qualified individual under the ADA at the time of his termination because he was unable to work in any capacity and had no certain date of return.[46] Similarly, in *Drake v. Spring Indep. Sch. Dist.*, the plaintiff took leave because she was unable to work due to ulcerative colitis.[47] After approximately five months, she had exhausted FMLA leave and non-FMLA medical leave.[48] The plaintiff's doctor stated at that time that she would be unable to return to work for at least another two months, at which point her employment was terminated.[49] The Fifth Circuit held that the plaintiff was not a qualified individual with a disability under the ADA because she was unable to perform the functions of any job.[50]

Here, as in *Moss* and *Drake*, the summary judgment record shows that Cocke had not been cleared by her doctor to return to work in any capacity at the time of her termination on January 21, 2015. LPG granted Cocke FMLA and non-FMLA leave through December 29, 2014. LPG then allowed Cocke to use personal leave through January 25th. But LPG ultimately denied Cocke's request to extend her leave through March 16, 2015 and informed her that she would be terminated if she could not return to work by January 25th. "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee

---

[45] *Id.*
[46] *Id.*
[47] No. 20-20376, 2021 WL 3176081, at *1 (5th Cir. July 27, 2021).
[48] *Id.*
[49] *Id.* at *6.
[50] *Id.*; *see also Quick*, 728 F. App'x at 396; *Dorsey v. Boise Cascade Co.*, 611 F. App'x 212, 213 (5th Cir. 2015). In *Quick*, the plaintiff suffered a work-related injury and was "physically unable to work at that time." She was terminated when she refused to return. The Fifth Circuit noted that the plaintiff was unable to perform the essential functions of the job for which she had been hired. Accordingly, she could not show that she was a qualified individual with a disability under the ADA. In *Dorsey*, the plaintiff was terminated after he was unable to return to work due to pain from a work-related injury. 611 F. App'x at 213. It was undisputed that, at the time of his termination, he was unable to work regardless of what accommodations were provided. *Id.* at 214. Because he could not work in any capacity, the plaintiff was not a qualified individual under the ADA. *Id.*

with indefinite leave."[51] While Cocke had given LPG a projected "return-to-work" date of March 16, 2015, even this date was tentative and was ultimately extended to September 2015. At the time of her termination, Cocke had been on leave for more than six months (July 14, 2014 through January 21, 2015). During this period, Cocke's return-to-work date had also been extended on at least three occasions. Cocke also conceded in writing that, even if she returned to work, she would not be able to perform the essential functions of her former position as LPG's South Region Physicians Practice Manager given the travel requirements of that position. Under these circumstances, the ADA did not require LPG to extend Cocke's leave indefinitely after she had exhausted her FMLA leave.[52]

Cocke, however, contends that LPG could have moved her into a new position that did not have the travel requirements of her prior managerial position. In other words, she argues that LPG did not consider that she may have been able to return to work earlier, albeit in a position with restrictions that accommodated her medical condition. In this regard, the summary judgment record includes an e-mail from Cocke's supervisor indicating that there may be a "part-time/PRN clerical role that [Cocke] could fill upon her return."[53] A reasonable accommodation of a disability may include reassigning an employee to a job with different duties and requirements but "[t]he plaintiff bears the burden of proving that an available position exists that [she] was qualified for and could, with reasonable accommodations, perform."[54] Cocke has not made that showing here. Even if the part-time/PRN clerical position was available at the time of her termination, Cocke has not come forward with evidence showing that she was qualified for that position given that Dr.

---

[51] *Delaval v. PTech Drilling Tubulars*, L.L.C., 824 F.3d 476, 481 (5th Cir. 2016).
[52] *Id.*
[53] ECF No. 40-6 at 31.
[54] *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

Rojas had not cleared her to return to work in any capacity. In fact, five months after Cocke's termination, Dr. Rojas indicated that Cocke was not able to perform even sedentary work until September 2015.[55]

Cocke also suggests that LPG failed to accommodate her disabilities because of bureaucratic mismanagement.[56] Specifically, Cocke argues that her request for a transfer to a new position was forwarded to the wrong department at LPG—to LPG's Leave Department rather than LPG's Employee Health Services.[57] According to Cocke, LPG's Employee Health Services was the group with authority to approve an accommodation, while the Leave Department's authority was limited to whether an employee was entitled to leave.[58] Again, even accepting these facts as true, Cocke fails to show that she was qualified for any alternative position given that she had not been cleared to return to work in any capacity at the time of her termination.

In sum, it is Cocke's burden to show that she is a qualified individual with a disability under the ADA. She has not met that burden given that she was not cleared by her doctor to return to work in any capacity at the time she exhausted her leave and LPG terminated her. Accordingly, LPG's motion for summary judgment is GRANTED.

---

[55] ECF No. 40-9 at 4. Cocke states in her Unsworn Declaration that if LPG had offered her sedentary work, she "would have tried to perform" it, and she "would have told [her] doctor to indicate" that she was capable of doing so. ECF No. 42-2 at ¶14. Cocke, however, points to no evidence showing that her treating physician would have cleared her to perform even sedentary duties. To the contrary, Dr. Rojas opined that Cocke was not in a position to return to sedentary work as late as June 2015. ECF No. 40-9. Conclusory or speculative statements in an affidavit generally are insufficient to create a genuine issue of material fact in response to a motion for summary judgment. *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (collecting cases). Cocke also suggests that Dr. Rojas "was being evaluated for competency issues at LPG" during Plaintiff's leave. ECF No. 42 at 8. Cocke testified that Dr. Rojas was "terminated from Lourdes and escorted off the property by the police" before January 5, 2015, and that Cocke was looking for a second opinion. ECF No. 40-4 at 26 Again, Cocke points to no evidence to support her assertions. To the contrary, the record suggests that Dr. Rojas was continuing to treat Cocke as late as June 2015. ECF No. 40-9 at 4.
[56] ECF No. 42 at 5-8.
[57] *Id.* at 7.
[58] *Id.*

## IV.
### CONCLUSION

For the reasons set forth above, LPG's Motion for Summary Judgment is GRANTED. Plaintiff's claims under the ADA for failure to accommodate and discriminatory termination are DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED this 11th day of January, 2022.

_____

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**